1  UNITED STATES DISTRICT COURT
   EASTERN DISTRICT OF NEW YORK
2  ------------------------------x
                                        23-CR-141(PKC)
3  UNITED STATES OF AMERICA,
                                        United States Courthouse
4                                       Brooklyn, New York

5          -versus-                     September 27, 2023
                                        11:00 a.m.
6  NICHOLAS WELKER,

7          Defendant.

8  ------------------------------x

9           TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
              BEFORE THE HONORABLE PAMELA K. CHEN
10               UNITED STATES DISTRICT JUDGE

11 APPEARANCES

12 For the Government:       UNITED STATES ATTORNEY'S OFFICE
                            Eastern District of New York
13                          271 Cadman Plaza East
                            Brooklyn, New York 11201
14                          BY:  ELLEN SISE, ESQ.
                               ANDREW REICH, ESQ.
15                          Assistant United States Attorneys

16 For the Defendant:       FEDERAL DEFENDERS OF NEW YORK
                            BY:  MICHAEL WEIL, ESQ.
17

18 Also Present:            ERICA DOBIN, FBI

19

20 Court Reporter:          Rivka Teich, CSR, RPR, RMR, FCRR
                            Phone:  718-613-2268
21                          Email:  RivkaTeich@gmail.com

22 Proceedings recorded by mechanical stenography.  Transcript
   produced by computer-aided transcription.

23

24

25

PLEADING

1              (In open court.)

2              THE COURTROOM DEPUTY:  All rise.  Criminal cause for

3    a pleading, docket 23-CR-141, United States vs. Welker.

4              MS. SISE:  Good morning, your Honor.  Ellen Sise and

5    Andrew Reich for the Government.  And Erica Dobin from the

6    Federal Bureau of Investigation.

7              THE COURT:  Good morning to all of you.

8              MR. WEIL:  Good morning, your Honor.  Federal

9    Defenders by Michael Weil.

10             THE COURT:  Good morning to you, Mr. Weil, and to

11   you Mr. Welker.

12             THE DEFENDANT:  Good morning everybody.

13             THE COURT:  So Mr. Weil, I understand your client

14   wishes to withdraw his previously entered plea of not guilty

15   and plead guilty at this time to Count One of the Indictment

16   pursuant to an agreement with the Government; is that correct?

17             MR. WEIL:  Yes, your Honor.

18             THE COURT:  So Mr. Welker, as you just heard, your

19   lawyer has confirmed for me that it is your wish at this time

20   to plead guilty to Count One of the Indictment in which you're

21   charged and that you'll be pleading guilty pursuant to a plea

22   agreement with the Government.  This is a serious decision and

23   I must be certain that you're making the decision with a full

24   understanding of your rights and the consequences of your

25   guilty plea.  I'm going to be explaining to you the rights

Rivka Teich CSR RPR RMR FCRR
Official Court Reporter

PLEADING

1  that you will be giving up by pleading guilty.

2          In addition, before I accept your guilty plea there

3  are a number of questions that I have to ask you to establish

4  that your plea is valid.  If you do not understand anything

5  that I say or ask you, let me know and I'll repeat or rephrase

6  it for you.  If you would like to consult with your attorney

7  further, let me know, I'll give you as much time as you need.

8  Have you understood everybody I've said so far?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Okay.  Your answers to my questions have

11  to be under oath.  I'll ask you to rise and raise your right

12  hand so you can be sworn in.

13          (Defendant sworn.)

14          THE COURT:  Have a seat, Mr. Welker.  You should

15  understand that now that you're under oath if you say anything

16  that is false or if you answer any of my questions falsely, by

17  that I mean knowing that the answer is false or incorrect,

18  your answers can be used against you in a separate prosecution

19  for making a false statement or for perjury.  Do you

20  understand?

21          THE DEFENDANT:  I understand.

22          THE COURT:  Let's start off by having you state your

23  full name.

24          THE DEFENDANT:  Nicholas Hazer (ph) Welker.

25          THE COURT:  How old are you?

PLEADING

1          THE DEFENDANT:  Thirty-two years old.

2          THE COURT:  How much formal education have you had.

3          THE DEFENDANT:  GED.

4          THE COURT:  Have you ever been treated or

5    hospitalized for any kind of mental illness?

6          THE DEFENDANT:  Yes.

7          THE COURT:  When was that?

8          THE DEFENDANT:  Dozens of times, it's been like five

9    years I think since I last did.  But for like a ten-year

10   period I did have, I was going in and out, here and there.

11         THE COURT:  Are you still under the care of a doctor

12   or psychiatrist for any reason?

13         THE DEFENDANT:  Yes.

14         THE COURT:  And does that involve?

15         THE DEFENDANT:  Currently, as I mentioned last time,

16   I'm being basically denied medication I've been taking for 16

17   years.  I'm struggling very much with that; but I do

18   understand what is going on here right now.

19         THE COURT:  What is the medication that you're not

20   getting?

21         THE DEFENDANT:  Klonopin.

22         THE COURT:  I remember you talking about that last

23   time.  You're still not getting that?

24         THE DEFENDANT:  No.  I've been doing sick call

25   requests daily.  I need to see the psychiatrist again.  I've

PLEADING

1  been doing sick call requests for the suboxone, which I still

2  haven't been given yet, even though we had that court order.

3          THE COURT:  Have you seen a doctor or psychiatrist

4  while at the MDC?

5          THE DEFENDANT:  Yes.  So psychology, they cleared me

6  for MAT.

7          THE COURT:  What is MAT?

8          THE DEFENDANT:  Medication assisted treatment for

9  the suboxone.

10          I did that, and I did the UA.  And now I'm just

11  waiting, I've been waiting this whole time for a 20-minute

12  medical doctor visit that I haven't, that they haven't gotten

13  around to giving me yet.  I did see the psychiatrist in June

14  and he's given me like four different medications in place of

15  that one, and they are not helping at all.  This is completely

16  unhelpful for me.

17          I've been kicking and screaming for basic medical

18  and mental healthcare that I feel like I'm being denied.

19          As I mentioned, I do understand what is going on

20  here and what I'm admitting to.

21          THE COURT:  I appreciate explaining what the

22  situation is and confirming that you understand why you're

23  here today.

24          THE DEFENDANT:  I appreciate you listening.

25          THE COURT:  Let me ask you, though, you are on four

PLEADING

1   medications, are you taking those?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Do they affect your ability to process

4   things or understand what is going on?

5          THE DEFENDANT:  No.

6          THE COURT:  Do you take them daily?

7          THE DEFENDANT:  Yes.

8          THE COURT:  We'll try to address and maybe I'll talk

9   to your lawyer later about the medication issues.

10         But for today's purpose and for right now, I do want

11  to just make sure that you're fully aware of why we're here;

12  is that correct?

13         THE DEFENDANT:  Yes.

14         THE COURT:  Your mind is clear?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Other than the medication you mentioned

17  that you're taking daily, have you had any other pills, drugs

18  or alcoholic beverages within the last two days?

19         THE DEFENDANT:  No.

20         THE COURT:  Mr. Weil, have you discussed the matter

21  of pleading guilty with your client?

22         MR. WEIL:  Yes, your Honor.

23         THE COURT:  Does he understand the rights that he

24  will be waiving by pleading guilty?

25         MR. WEIL:  Yes, your Honor.

PLEADING

1              THE COURT:  Is he fully capable of fully

2    understanding the nature of these proceedings?

3              MR. WEIL:  Yes, your Honor.

4              THE COURT:  Do you have any doubt as to his

5    competence to plead guilty at this time?

6              MR. WEIL:  I don't.

7              THE COURT:  Have you advised him of the maximum and

8    minimum sentence and fine that can be imposed?

9              MR. WEIL:  Yes.

10             THE COURT:  Have you discussed with him the affect

11   of the sentencing guidelines?

12             MR. WEIL:  Yes, sir.

13             THE COURT:  Mr. Welker, have you reviewed a copy of

14   the Indictment in which you're charged with your attorney?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Do you understand that Count One of this

17   Indictment charges you with conspiring to transmit threatening

18   communication.

19             THE DEFENDANT:  Yes.

20             THE COURT:  I want to make sure that you understand

21   that if the Government were to go to trial against you on this

22   charge, they would have to prove certain elements of the crime

23   beyond a reasonable doubt.  So each of those elements would

24   have to be proved beyond a reasonable doubt.

25             For the conspiracy the elements, first, that two or

8

PLEADING

1   more persons entered into an unlawful agreement; and in

2   particular, the one that is charged in this Indictment.

3           Secondly, that the defendant, you, knowingly and

4   willfully became a member of that conspiracy.

5           Third, that one of the members of the conspiracy

6   knowingly committed at least one of the overt acts charged in

7   the Indictment, those are on page two of the Indictment.

8           Have you reviewed those overt acts, Mr. Welker?

9           THE DEFENDANT:  Yes.

10          THE COURT:  I'm not going to read them to you, but

11  if the Government were to go to trial against you they would

12  have to prove that one member of the conspiracy knowingly

13  committed at least one of these overt acts that is charged.

14          Then finally, the Government would have to prove

15  beyond a reasonable doubt that the overt act which was

16  committed, was committed to further some objective of the

17  conspiracy.  As I said before, the charge you're pleading

18  guilty to is a conspiracy charge, but I want you to understand

19  that the object of that conspiracy is or was to communicate

20  threatening, to transmit threatening communications which is a

21  violation of Title 18 United States Code Section 875(c).  That

22  crime in and of itself has certain elements.

23          The first of which is that you or -- it's hard to

24  explain conspiracy, but the idea is that you and the others

25  agreed that somebody would threaten to injure the person

PLEADING

1    identified as victim one.

2              The second element of a threat charge is that the

3    threat was transmitted in interstate or foreign commerce.  So

4    again, you and the others would have to agree that is what you

5    would try to do.

6              And then third, that the defendant or someone who is

7    in this conspiracy would transmit the threat knowingly and

8    intentionally.

9              That's what you all would have to agree you were

10   trying to do.  Do you understand that?

11             THE DEFENDANT:  Yes.

12             THE COURT:  I also want you to know because the law

13   in this area is changing in someways, I know that your lawyer

14   is aware of this, but there was a Supreme Court case

15   *Counterman vs. Colorado* in which the Supreme Court held for

16   there to be a true threat, the defendant would have to have a

17   subjective understanding that the statements were threatening

18   in nature.  So it's hard to explain how that would really play

19   out in a conspiracy case, but the bottom line is the

20   Government would have some obligation to prove that you and

21   the others intended to transmit communications that you

22   believed or had reason to believe or recklessly disregarded in

23   someway were threatening in nature.  Do you understand that?

24             THE DEFENDANT:  Yes.

25             THE COURT:  You would have to intend to scare

PLEADING

1  someone, frighten someone, intimidate someone.  You understand

2  that?

3         THE DEFENDANT:  Yes.

4         THE COURT:  That would be have to be the goal of

5  your conspiracy.  Do you understand?

6         THE DEFENDANT:  Yes, I understand.

7         THE COURT:  You should also understand that there is

8  a forfeiture allegation contained in the Indictment.  And that

9  simply puts you on notice that once you plead guilty and are

10  convicted of this crime, the Government could seek, likely

11  will seek, to forfeit from you or take from you property that

12  was used to commit the crime or property that you obtained by

13  committing this crime.  Do you understand that?

14         THE DEFENDANT:  Yes.

15         THE COURT:  I obviously don't know if there is any

16  such property, but you're on notice that will happen as a

17  consequence of your guilty plea.  Do you understand that?

18         THE DEFENDANT:  Yes.

19         THE COURT:  Mr. Welker, have you had enough time to

20  discuss whether or not to plead guilty with your attorney?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Are you fully satisfied with the

23  counsel, representation, and advice given to you by your

24  attorney, Mr. Weil, in this matter?

25         THE DEFENDANT:  Yes, I am.

PLEADING

1          THE COURT:  I'm going to explain to you, Mr. Welker,

2     the rights that you'll be giving up by pleading guilty.

3          First of all, you have the right to continue to

4     plead not guilty.  No one can be forced to plead guilty.  Do

5     you understand that?

6          THE DEFENDANT:  The yes.

7          THE COURT:  If you were to continue your not guilty

8     plea, you would have the right under the Constitution and laws

9     of the United States to a speedy and public trial by jury.  Do

10    you understand?

11         THE DEFENDANT:  Yes.

12         THE COURT:  At trial you would be presumed to be

13    innocent and the Government would have to prove your guilt, as

14    I said before, beyond a reasonable doubt.  Do you understand?

15         THE DEFENDANT:  Yes.

16         THE COURT:  You would have the right to the

17    assistance of counsel for your defense, and Mr. Weil would

18    continue to represent you at the trial and at all other

19    proceedings related to the trial.  Do you understand?

20         THE DEFENDANT:  Yes.

21         THE COURT:  You would have the right to see and hear

22    all the witnesses at trial and to have them cross-examined in

23    your defense.  Do you understand?

24         THE DEFENDANT:  Yes.

25         THE COURT:  You would have the right not to testify

PLEADING

1    at trial unless you voluntarily choose to do so.  Do you

2    understand?

3              THE DEFENDANT:  Uh-huh, yes.

4              THE COURT:  You would also have the right to call

5    witnesses and to have them appear at the trial to testify in

6    your defense.  Do you understand that?

7              THE DEFENDANT:  Yes.

8              THE COURT:  You would have the right -- if you

9    choose not to testify at trial and not to put on any evidence

10   at the trial, the fact that you did not do so could not be

11   used against you at trial.  Do you understand?

12             THE DEFENDANT:  Yes.

13             THE COURT:  In other words, the Government could not

14   argue to the jury that they should convict you or consider in

15   any way the fact that you did not testify -- let me back that

16   up.

17             In other words, the Government could not argue to

18   the jury that they should consider in any way the fact that

19   you did not put on any evidence and did not testify at trial

20   in determining your guilt.  Do you understand that?

21             THE DEFENDANT:  Yes.

22             THE COURT:  By entering a guilty plea, however, and

23   if I accept your plea, there will be no trial and you will

24   have given up your right to a trial and all these other rights

25   that we just discussed.  Do you understand that?

PLEADING

1              THE DEFENDANT:  Yes.

2              THE COURT:  If you plead guilty there will be no

3    right of appeal from the judgment of guilt.  Do you

4    understand?

5              THE DEFENDANT:  Yes.

6              THE COURT:  If you plead guilty I will simply enter

7    a judgment of guilt on the basis of your guilty plea and the

8    Government will be freed of any responsibility to prove your

9    guilt.  Do you understand?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Finally, if you plead guilty I will have

12   to ask you questions about what you did in order to make sure

13   you're guilty of the crime that you're pleading guilty to, and

14   by answering my questions you will be giving up your right

15   against self-incrimination.  Do you understand that?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Do you understand each and every one of

18   these rights that we've just discussed, Mr. Welker?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Are you willing to give up your right to

21   a trial and all of these other rights?

22             THE DEFENDANT:  Yes.

23             THE COURT:  As I mentioned earlier, it's my

24   understanding that you're pleading guilty pursuant to a plea

25   agreement with the Government.  That agreement has been marked

PLEADING

1    as Court Exhibit 1 in your case.  Did you sign that agreement

2    on the last page where your name is typewritten?

3              THE DEFENDANT:  Yes, I have.

4              THE COURT:  Did you review the agreement with your

5    attorney before signing it?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Do you feel like you've had enough time

8    to review the plea agreement with your lawyer?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Do you understand the terms of your

11   agreement with the Government?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Do you have any questions at all about

14   the plea agreement, Mr. Welker?

15             THE DEFENDANT:  No.

16             THE COURT:  Does this agreement represent your

17   entire understanding with the Government?

18             THE DEFENDANT:  Yes.

19             THE COURT:  Has anyone made you any promise that is

20   not in this agreement to get you to accept it?

21             THE DEFENDANT:  No.

22             THE COURT:  Has anyone made you any promise -- has

23   anyone threatened you in any way --

24             THE DEFENDANT:  No.

25             THE COURT:  -- to persuade you to accept this

PLEADING

1    agreement?

2                 THE DEFENDANT:  No.

3                 THE COURT:  Are you pleading guilty of your own free

4    because you are guilty?

5                 THE DEFENDANT:  Yes.

6                 THE COURT:  Mr. Weil, were all formal plea offers

7    from the Government communicated to your client?

8                 MR. WEIL:  Yes.

9                 THE COURT:  Let's talk about the potential penalties

10   you face by pleading guilty.

11               The maximum term of imprisonment that can be imposed

12   on the crime charged in Count One, the conspiracy charge, is

13   five years.  That's the maximum term of imprisonment.  There

14   is no mandatory minimum term of imprisonment.  Do you

15   understand that?

16               THE DEFENDANT:  Yes.

17               THE COURT:  Any term of imprisonment can be followed

18   by a term of supervised release up to three years.  Supervised

19   release refers to the period of time when you will be subject

20   to supervision by the probation department after completing

21   any term of imprisonment.  During the period of supervised

22   release you will be subject to certain rules.  And if you

23   violate any of those rules you can be sent back to prison for

24   up to two additional years without any credit for any time you

25   may have spent in prison before then and without any credit

PLEADING

1  for any time you may have spent on supervised release before

2  then.  Do you understand that?

3          THE DEFENDANT:  Yes.

4          THE COURT:  You should understand that you can be

5  sent back to prison for violating supervised release without a

6  jury trial.  Do you understand that?

7          THE DEFENDANT:  Yes.

8          THE COURT:  You should also understand that you face

9  a possible monetary fine of the greater of $250,000 or twice

10  the gross gain or twice the gross loss caused by your crime.

11  Do you understand that?

12          THE DEFENDANT:  Yes.

13          THE COURT:  In addition, I will have to impose a

14  special assessment of $100 on you at the time of sentencing

15  that will be due immediately at the time of sentencing.  Do

16  you understand that?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Are you a U.S. citizen, Mr. Welker?

19          THE DEFENDANT:  Yes, I am.

20          THE COURT:  I was going to -- if for some reason

21  you're wrong about that and you're in not a U.S. citizen, you

22  can be deported or removed from the country based on your

23  guilty plea.  Do you understand that?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Let's turn now to the guidelines.  Under

PLEADING

1    the Sentencing Reform Act of 1984 the U.S. Sentencing

2    Commission has issued guidelines for judges to follow in

3    determining the sentence in a criminal case.  These guidelines

4    are advisory and I will consider them along with the

5    particular facts and circumstances of your case, as well as

6    sentencing factors set forth in Title 18 United States Code

7    Section 3553(a) in determining your sentence.  Have you and

8    your attorney, Mr. Welker, discussed how the advisory

9    guideline might apply to your case?

10                   THE DEFENDANT:  Yes.

11                   THE COURT:  Has the Government estimated a likely

12   guideline range?

13                   MS. SISE:  Yes, your Honor.

14                   THE COURT:  What is that?

15                   MS. SISE:  Based on acceptance of responsibility,

16   the Government estimates the guidelines range is 30 to 37

17   months.

18                   THE COURT:  This assumes the defendant is in

19   criminal history category five; is that right?

20                   MS. SISE:  Yes, your Honor.

21                   THE COURT:  Mr. Welker, what is important for you to

22   understand is that in paragraph two of your plea agreement

23   you've stipulated to the guidelines calculation that is in the

24   agreement.  Do you understand that?

25                   THE DEFENDANT:  Yes.

PLEADING

1          THE COURT:  Stipulated means that you agree to this

2    guidelines calculation, and basically you won't be able

3    allowed to contest that calculation at the final of

4    sentencing.  Do you understand that?

5          THE DEFENDANT:  Yes.

6          THE COURT:  You've also agreed to waive or give up

7    your right to what is known as a Fatico hearing or some sort

8    of factual hearing relevant to sentencing.  Do you understand

9    that?

10          THE DEFENDANT:  Yes.

11          THE COURT:  The Government has also put you on

12    notice in paragraph two, page three, based on the facts and

13    circumstances known to them at this time they do intend to

14    seek an above guideline sentence.  Do you understand that?

15          THE DEFENDANT:  Yes.

16          THE COURT:  So in other words, the Government is

17    letting you know, and obviously you and your lawyer now know

18    and I presume have known before you signed the agreement, that

19    they do intend to ask for a sentence above the 30 to 37 months

20    range.  Do you understand that?

21          THE DEFENDANT:  Yes.

22          THE COURT:  It's also important for you to

23    understand that whatever guidelines range your lawyer and you

24    have discussed, or even the agreed to in the plea agreement,

25    any of those guidelines estimates could be wrong.  Do you

PLEADING

1    understand that?

2              THE DEFENDANT:  Yes.

3              THE COURT:  As you sit here today there is no

4    guarantee as to what guideline range I will find applies at

5    the time of your sentencing.  Do you understand?

6              THE DEFENDANT:  Yes.

7              THE COURT:  If the guideline range I decide applies

8    is different than what you hoped for or expect, you cannot

9    take your guilty plea back.  Do you understand that?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Similarly, as you sit here today there

12   is no way for you to know what sentence I will impose.  Do you

13   understand?

14             THE DEFENDANT:  Yes.

15             THE COURT:  If the sentence I impose is different

16   than what you hoped for or expect, you cannot take your guilty

17   plea back.  Do you understand?

18             THE DEFENDANT:  Yes.

19             THE COURT:  All right.  Finally, if you're sentenced

20   to a term of imprisonment you will not be released on parole.

21   Do you understand that?

22             THE DEFENDANT:  Yes.

23             THE COURT:  There is no parole in the federal

24   system; therefore, you will not be released on parole.  Do you

25   understand?

PLEADING

1          THE DEFENDANT:  Yes.

2          THE COURT:  Let's turn to your right to appeal.

3    Under some circumstances you or the Government might have the

4    right to appeal the sentence I impose.  However, in the

5    agreement you've entered into, in particular in paragraph

6    four, you've agreed to not to file an appeal or otherwise

7    challenge the conviction or sentence in this case so long as I

8    impose a term of imprisonment of 46 months or less.  Do you

9    understand that?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Do you have any questions at all,

12   Mr. Welker, about the rights you're giving up, potential

13   punishments you face, the plea agreement you've entered into

14   with the Government, the nature of the charge to which you'll

15   be pleading guilty, or anything else?

16          THE DEFENDANT:  No.

17          THE COURT:  Are you ready to plead guilty,

18   Mr. Welker?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Mr. Weil, do you know of any reason why

21   your client should not plead guilty?

22          MR. WEIL:  No, your Honor.

23          THE COURT:  Mr. Welker, what is your plea to Count

24   One of the Indictment, guilty or not guilty?

25          THE DEFENDANT:  Guilty.

PLEADING

1          THE COURT:  Are you making this plea of guilt

2    voluntarily and of your own free will?

3          THE DEFENDANT:  Yes, I am.

4          THE COURT:  Has anyone threatened or forced you to

5    plead guilty?

6          THE DEFENDANT:  No.

7          THE COURT:  Other than your plea agreement with the

8    Government, has anyone made you any promise that has caused

9    you to plead guilty?

10          THE DEFENDANT:  No.

11          THE COURT:  Has anyone made you any promise as to

12    what your sentence will be?

13          THE DEFENDANT:  No.

14          THE COURT:  Tell me in your own words what makes you

15    guilty of Count One of the Indictment.

16          THE DEFENDANT:  I'm pleading guilty because I

17    arranged to have this image made, this flier, with the

18    intention of scaring and making them back off.

19          THE COURT:  Let's back up.  Did you agree with other

20    individuals to do this?

21          THE DEFENDANT:  Yes.

22          THE COURT:  What was your agreement?  What did you

23    all agree to do?

24          THE DEFENDANT:  Just to have this created and get it

25    out to him somehow.

PLEADING

1           THE COURT:  So who is this "him?"

2           THE DEFENDANT:  (Victim 1).

3           THE COURT:  That's the person identified as victim

4    one in the Indictment?

5           THE DEFENDANT:  Yes.

6           THE COURT:  What were you intending to do by sending

7    this -- is it a picture?

8           THE DEFENDANT:  Yes.

9           THE COURT:  What were you and the others intending

10   to do?

11          THE DEFENDANT:  Just intimidate him.

12          THE COURT:  So you wanted to scare him.

13          THE DEFENDANT:  Yes.

14          THE COURT:  When did you and the others agree reach

15   this agreement approximately?

16          THE DEFENDANT:  Summer of 2021.

17          THE COURT:  Where were you at the time you were

18   engaged in this activity?

19          THE DEFENDANT:  San Jose, California.

20          THE COURT:  Where was the victim who was to receive

21   this image?

22          THE DEFENDANT:  I'm assuming he was here in

23   Brooklyn, New York.

24          THE COURT:  You believe that the victim was in

25   Brooklyn?

PLEADING

1          THE DEFENDANT:  Yes.

2          THE COURT:  Was the agreement to send it to the

3   victim in Brooklyn; is that right?

4          THE DEFENDANT:  Yes.

5          THE COURT:  How was it going to be sent?

6          THE DEFENDANT:  Posted on his Twitter.

7          THE COURT:  So via electronic transmission via the

8   Internet?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Is there anything else?  Let me go back

11   for a minute.  The image that you were sending, what was it?

12          THE DEFENDANT:  It had gun pointed to his head.

13          THE COURT:  So literally a gun pointed to the head

14   of (Victim 1).

15          THE DEFENDANT:  Yes.

16          THE COURT:  So you had some sort of photographic

17   image of (Victim 1) in this image?

18          THE DEFENDANT:  Yes.

19          THE COURT:  And then a gun superimposed on that

20   pointed at his head?

21          THE DEFENDANT:  Yes.

22          THE COURT:  At the time you and the others did this,

23   did you believe that he would be intimidated by this?

24          THE DEFENDANT:  Yes.

25          THE COURT:  And perceive it as a threat?

PLEADING

1          THE DEFENDANT:  Yes.

2          THE COURT:  Is there anything else I should ask,

3   Ms. Sise of Mr. Welker?

4          MS. SISE:  One moment, your Honor.

5          Just one thing to raise, if it would be possible to

6   seal the name of victim number one, his name is not otherwise

7   public.

8          THE COURT:  Okay.  I do note there are a few

9   individuals in the courtroom.  Do you want us to inquire as to

10  who they are?

11         MS. SISE:  I know that the folks on the left-hand

12  side are from law enforcement.

13         THE COURT:  All of them?

14         MS. SISE:  I'm sorry, I don't think the person in

15  the back row is law enforcement.

16         THE COURT:  Sir, who are you?

17         AUDIENCE MEMBER:  Intern with the U.S. Attorneys

18  Office.

19         MS. SISE:  No problem.

20         THE COURT:  The other two are with my chambers,

21  that's not an issue.

22         We'll seal the record with regard to the name,

23  redacted to say "Victim 1".  Otherwise the courtroom has

24  individuals who are associated with the United States

25  Attorney's Office or my chambers or the court.

PLEADING

1    I want to ask one other question, though, just to be

2    sure.  Mr. Welker, when you said you agreed with others, how

3    many other individuals were part of this conspiracy?

4    THE DEFENDANT:  Two.

5    THE COURT:  So you and one other person?

6    THE DEFENDANT:  No, me and two other people.

7    THE COURT:  Okay.  With respect to the act that was

8    to be committed, the overt act --

9    MR. WEIL:  I think he admitted to E, that it would

10   be reposted to his Twitter handle.

11   THE COURT:  B as in boy?

12   MR. WEIL:  E.

13   THE COURT:  Oh, E, okay.

14   Mr. Welker, you're admitting that on page two of the

15   Indictment, under overt act, where it says "E," you're

16   admitting that on or about September 4 the minor conspirator

17   member number two posted to an ECS, electronic communication

18   service group chat, a screenshot of a Twitter user tweeting

19   the August 2021 threat image; is that correct?

20   THE DEFENDANT:  Yes.

21   THE COURT:  So that image is the one that you

22   referred to earlier with the gun pointing towards to Victim

23   1's head?

24   THE DEFENDANT:  Yes.

25   THE COURT:  To your knowledge, your co-conspirator

PLEADING

1    posted that screenshot using his Twitter handle; is that

2    correct?

3              THE DEFENDANT:  Yes.

4              THE COURT:  That was done to further the

5    conspirator; is that right?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Was that date, the date of the posting,

8    on or about September 4, 2021?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Anything else I should inquire of

11   Mr. Welker?

12             MS. SISE:  Nothing further, your Honor.

13             THE COURT:  Based on my observations of Mr. Welker,

14   his demeanor in court, his answers to my questions and the

15   representations of his counsel, I do find that Mr. Welker is

16   fully competent and capable of entering an informed guilty

17   plea.  He's aware of the nature and the -- the charge to which

18   he just pled guilty and the consequences of his guilty plea

19   and that his plea is knowing and voluntary.  I further find

20   that his allocution just now establishes the essential

21   elements of the crime charged in Count One.  I, therefore,

22   accept your guilty plea to Count One of the Indictment,

23   Mr. Welker, and adjudicate you guilty of that crime.

24             A presentence report is going to be prepared by the

25   Probation Department in preparation for sentencing.  You'll be

PLEADING

1   interviewed for that report by a Probation Officer.  You have

2   the right to have your counsel present for that interview.

3   Would you like Mr. Weil to be there?

4             MR. WEIL:  Yes.

5             THE COURT:  Sentencing is scheduled for January 16,

6   2024, at 11:30 a.m.

7             Is there anything else we need to address at this

8   time from the Government?

9             MS. SISE:  No, thank you, your Honor.

10             THE COURT:  From the defense?

11             MR. WEIL:  No, your Honor.  We're continuing to

12   provide, regarding medical issues, records to the MDC from

13   Mr. Welker's prior doctors in an effort to get them to comply,

14   to prescribe medication consistent with what he previously

15   received.

16             THE COURT:  You don't see a need for me to

17   intervene.

18             MR. WEIL:  I don't know if the Court would

19   intervene.  I don't know if the Court is prepared to order to

20   give him the same medication that he previously received.

21             THE COURT:  Obviously I can't tell them to prescribe

22   any medication.  What we can do is, why don't you send me

23   under seal an ex parte letter a letter what you of you want

24   them to do.  I'll communicate that via a medical note.  I

25   can't opine one way or the other.  I'm just saying this is

PLEADING

1   what he's requests and further requesting that they let me

2   know if they are looking into it.

3            MR. WEIL:  Okay.

4            THE DEFENDANT:  Thank you.

5            THE COURT:  At least there will be some

6   accountability.

7            MR. WEIL:  Right.  We'll include that when we

8   provided medical records.

9            THE DEFENDANT:  I appreciate that very much.  Thank

10  you.

11           THE COURT:  All right, absolutely.

12           I am returning the originally signed plea agreement

13  to the Government for safekeeping, that's Court Exhibit 1.

14           This matter is concluded.  Thank you very much

15  everyone.

16           (Whereupon, the matter was concluded.)

17                   *    *    *    *    *

18  I certify that the foregoing is a correct transcript from the
    record of proceedings in the above-entitled matter.

19

20  */s/ Rivka Teich*
    Rivka Teich, CSR RPR RMR FCRR
21  Official Court Reporter
    Eastern District of New York
22

23

24

25